# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**RODNEY HERRIS,**

    Plaintiff,

    v.

**OFFICER DEAN ANDREW, et al.,**

    Defendants.

CASE NO. 3:23 CV 1811

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending in this 42 U.S.C. § 1983 case is Defendants Dean Andrew[1], Christopher Rutledge, Austin McDermott, and the City of Maumee and Maumee Police Department's Motion to Dismiss Plaintiff Rodney Herris's Complaint. (Doc. 6). Plaintiff opposes (Doc. 9), and Defendants reply (Doc. 11). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons discussed below, the Court grants in part and denies in part the Motion to Dismiss; the Court declines to dismiss at this stage Plaintiff's federal excessive force claim and state law reckless action and conscious disregard claim.

## BACKGROUND

This case arises out of Plaintiff's interactions with Defendants Dean, Rutledge, and McDermott on December 23, 2021. (Doc. 1, at ¶¶ 12-14). Plaintiff asserts the Maumee Police Department responded to a medical emergency; the emergency was resolved by medical professionals who then left the premises, but Dean, Rutledge and McDermott "remained at"

---

1. Defendants note Sergeant Andrew Dean is misnamed in the Complaint as "Officer Dean Andrew". (Doc. 6, at 1 n.1).

Plaintiff's residence. *Id.* at ¶ 14; *see also id.* at ¶ 15 ("several responding officers entered and remained at Plaintiff's residence").

Rutledge and Dean "question[ed] and harass[ed]" Plaintiff. *Id.* at ¶ 15. McDermott went into a nearby room to speak with Plaintiff's partner. *Id.* at ¶ 16. Plaintiff expressed "frustration" about his partner and how "she had not been a good caretaker for him as he was recovering from a medical procedure", but he "never threatened or implied he would physically abuse" her and there was no domestic violence allegation or investigation. *Id.* at ¶¶ 17-18.

Plaintiff told the officers about his medical issues and recent discharge from the hospital while sitting on a stair step inside his home; he informed them his medical state was fragile and movement was difficult. *Id.* at ¶¶ 19-20. He then attempted to get up from his seated position, "at which time Officer Rutledge pushed him back down." *Id.* at ¶ 21. When asked what officers could do, Plaintiff replied "Leave. Go home. Enjoy your afternoon." *Id.* at ¶ 22. The officers did not leave and continued to question Plaintiff. *Id.* at ¶ 23. Plaintiff then attempted to speak with his partner, but Rutledge interrupted him, stating, "Nope. Talk to me. You're not going to talk to anybody else until we're done." *Id.* at ¶ 24. He again tried to stand up "in order to talk to" his partner, "yet the officers pushed him back on the staircase." *Id.* at ¶ 25. He attempted again to "stand up and step forward to catch Renee's attention", but the officers "pushed him against the wall and began to arrest him." *Id.* at ¶ 26. All three officers participated – Officer McDermott restrained Plaintiff's left arm, Officer Dean restrained Plaintiff's right arm, and Officer Rutledge tried to handcuff him; Rutledge "was able to restrain Plaintiff's left hand but then struggled to even open the right-hand cuff." *Id.* at ¶¶ 27-28.

McDermott then "slammed Plaintiff to the staircase where Plaintiff was previously seated." *Id.* at ¶ 29. Because Plaintiff's hands were behind his back, he could not brace his fall;

he "suffered a major laceration to his face and began to bleed profusely." *Id.* at ¶¶ 30-31. All three officers then used force to place the remaining handcuff on Plaintiff "and fully restrained him while a pool of plaintiff's blood settled and grew in size on the stair steps." *Id.* at ¶ 32. The officers "let Plaintiff lay on the staircase until the medics arrived back to his house and transported him to Flower Hospital." *Id.* at ¶ 34.

During this encounter, "Plaintiff never protested with violence or made any threatening gestures toward the officers". *Id.* at ¶ 33.

His facial injuries required, among other treatment, surgery and stitches. *Id.*

Plaintiff subsequently pleaded no contest to charges of misconduct at an emergency in violation of Ohio Revised Code § 2917.13 and assault in violation of Ohio Revised Code § 2903.13 arising out of this encounter. *See* Doc. 6-4, at 1, 11.[2] Specifically, the Complaints as to each charge stated:

> During a medical emergency, Rodney G. Herris failed to follow lawful orders from police officers resulting in a physical altercation between him and officers. During the altercation, Rodney kicked and flailed his body, continued to express he wasn't going to comply and kicked a Maumee paramedic in the leg . . .

(Doc. 6-4, at 3, 11).

Plaintiff brings two claims for relief. Count One asserts a claim under 42 U.S.C. § 1983 for unlawful arrest and excessive force. Count Two asserts a state law claim that the Officers acted recklessly and with conscious disregard of Plaintiff by "questioning and harassing [him] after resolution of the medical emergency, remaining on the premises without justification, and

---

2. This Court finds it can consider the court records Defendants attach to their motion. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) ("[A] court ruling on a motion to dismiss 'may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.'") (quoting *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

using unnecessary and excessive force while Plaintiff's hands were restrained behind his back." (Doc. 1, at 8).

## STANDARD OF REVIEW

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to Plaintiff, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Defendants argue Count One of Plaintiff's Complaint must be dismissed because it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and alternatively, because the Officers are entitled to qualified immunity, and the *Monell* claim against the City is derivative of those claims and must also be dismissed. They contend Count Two should be dismissed because the Officers are entitled to immunity. Plaintiff opposed and Defendants replied. For the following reasons, the Court grants Defendants' Motion as to Plaintiff's *Monell* claim and false arrest claim in Count One but denies Defendants' Motion as to Plaintiff's excessive force claim in Count One and the entirety of Count Two.

Municipal Liability

Plaintiff brings his § 1983 claim against the City of Maumee as well as the individual officers on the ground that the City "is responsible for the training, supervision, and control of its employees, and its policies or customs contributed to the violation of Plaintiff's constitutional rights." (Doc. 1, at 7). This is a *Monell* claim of municipal liability. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). Under *Monell*, a municipality cannot be held liable solely for employing a tortfeasor under a *respondeat superior* theory, but it can be held liable for its own illegal acts caused by a municipal policy or custom. *Id.* at 691.

Defendants argue the *Monell* claim fails "[b]ecause Plaintiff cannot establish any § 1983 claim against the Defendant Officers". (Doc. 6-1, at 24). But this Court finds that regardless of the viability of Plaintiff's claims against the officer defendants, Plaintiff fails to state a viable municipal liability claim in the first instance. As Defendants correctly point out (Doc. 6-1, at 3), Plaintiff makes no reference to any particular policy, custom, training protocol, failure to train, or other directive made by the City to its employees which would have guided the officer defendants' behavior in the interaction underlying Plaintiff's Complaint. In the Complaint's single sentence concerning the City's liability, Plaintiff merely recites the essential element of a *Monell* claim and thus fails to state this claim with the particularity required by *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 ("a formulaic recitation of the elements of a cause of action will not do") (quoting *Twombly*, 550 U.S. at 555). Count One as to the City of Maumee is therefore dismissed.

Heck v. Humphrey

Defendants first contend Plaintiff's § 1983 claims in Count One must be dismissed pursuant to the *Heck* doctrine. In *Heck v. Humphrey*, the Supreme Court held that "a plaintiff

5

cannot recover in a § 1983 suit when the basis for the claim necessarily implies the invalidity of a previous state court conviction." 512 U.S. 477, 487 (1994); *see also Carr v. Louisville-Jefferson Cnty.*, 37 F.4th 389, 392 (6th Cir. 2022). If *Heck* applies, a plaintiff "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. Plaintiff argues "there is room for the facts alleged [in the Complaint] and the facts essential to the judgment . . . to peacefully co-exist[.]" (Doc. 9, at 4) (quoting *Perry v. Erdos*, 2022 WL 16571383, at *4 (S.D. Ohio), *report and recommendation adopted*, 2022 WL 17082769 (S.D. Ohio)).

*False Arrest*

Plaintiff's Complaint asserts Officers Dean, Rutledge, and McDermott "unlawfully arrest[ed]" him "for 'noncompliance'". (Doc. 1, at ¶ 40, 43). Defendants contend this § 1983 false arrest claim is barred by Plaintiff's no contest pleas to misconduct at an emergency in violation of Ohio Revised Code § 2917.13 and assault in violation of Ohio Revised Code § 2903.13. Although referring generally to having been "unlawfully arrested" and arguing in opposition to Defendants' invocation of *Heck*, Plaintiff's opposition brief does not expressly respond to this argument, but rather focuses almost exclusively on the excessive force claim. *See* Doc. 9, at 4-6.

In a false arrest claim brought under 42 U.S.C. § 1983, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). An arrest is valid so long as there is probable cause for a single charge of an arrestable offense. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010). A no contest plea concedes probable cause. *See Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 561

6

(6th Cir. 2010) ("[Plaintiff] cannot challenge the officer's probable cause that she committed a crime because she conceded that fact when she pleaded no contest."); *Walker v. Schaffer,* 854 F.2d 138 (6th Cir. 1988) (no contest pleas in state criminal proceedings preclude federal claims that officers acted without probable cause),

The Court finds Plaintiff's false arrest claim is barred by *Heck*. Plaintiff conceded there was probable cause for his arrest when he pleaded no contest to charges for assault and misconduct at an emergency.

*Excessive Force*

Plaintiff's Complaint asserts Officers Dean, Rutledge, and McDermott used excessive force during his arrest when they, while he was handcuffed, "forcibly pushed him against a wall and subsequently slammed him down on the stair steps in a reckless manner." (Doc. 1, at ¶ 41).

The Sixth Circuit has applied *Heck* to bar § 1983 excessive force claims in two circumstances: (1) when the crime of conviction included the lack of excessive force as an element; and (2) when the plaintiff could have raised excessive force as an affirmative defense to the crime. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014). "In each of these circumstances, the § 1983 suit would 'seek[ ] a determination of a fact that, if true, would have precluded the conviction." *Id.* at 609 (quoting *Schreiber*, 596 F.3d at 334).

A claim of excessive force by officers is available as an affirmative defense to assault charges. *See Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005) ("Cummings' only defense to the assault charge against him would have been to claim that the officers used excessive force. Cummings did not make such an argument, instead pleading no contest to assaulting Vaughn. It is for this reason that *Heck* bars Cummings' Fourth Amendment excessive force claim from moving forward in the instant lawsuit."). Though the procedural facts in this

7

case are analogous to those in *Cummings* – Plaintiff pled no contest to an assault charge rather than raising an affirmative defense of excessive force, then brought an excessive force § 1983 claim – Plaintiff responds that "claims for excessive force are not subject to *Heck's* bar when the alleged excessive force was applied after the activity giving rise to the conviction." (Doc. 9, at 5) (quoting *Perry*, 2022 WL 16571383 at *4). "Therefore, a court must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct." *Hayward*, 759 F.3d at 612.

Plaintiff's § 1983 claim refers to Defendants' use of excessive force "[w]hile Plaintiff was under arrest" and "during the arrest." (Doc. 1, at 6-7). Plaintiff specifically references how, "[w]hile Plaintiff was under arrest and his hands were restrained behind his back, [Defendants] forcibly pushed him against a wall and subsequently slammed him down onto the stair steps in a reckless manner." *Id.* at 6. The complaint underlying Plaintiff's assault charge, attached by Defendants to their Motion to Dismiss, states that "[d]uring the altercation, [Plaintiff] kicked and flailed his body, continued to express he wasn't going to comply and kicked a Maumee Paramedic in the leg in an attempt to cause harm, an offense of Assault". (Doc. 6-4, at 12). Plaintiff pled no contest, therefore, to assaulting one of the paramedics on the scene prior to Defendants arrest of Plaintiff. From the pleadings, the underlying offense is not of the same instance as the allegation of unconstitutional conduct.

Defendants cite cases in which *Heck* bars excessive force claims related to instances in which "a plaintiff has been convicted of criminal charges arising out of forceful encounters between law enforcement officers and a Section 1983 plaintiff." (Doc. 6-1, at 18) (citing *Cummings*, *Hayward*, among others). But in this case, Plaintiff was not convicted of assaulting one or more of the officers against whom he brings an excessive force claim – he was convicted

8

of assaulting a paramedic no longer present when Defendants allegedly used excessive force. *Heck* cannot, therefore, bar Plaintiff's excessive force claim.

Qualified Immunity

Defendants argue in the alternative that they are entitled to qualified immunity as a defense to Plaintiff's excessive force claim. (Doc. 6-1, at 15). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises qualified immunity, the burden shifts to the plaintiff to show "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he was doing violated that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Although "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to discovery," *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), the Sixth Circuit has also "cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). Thus, "[a]lthough an [official's] entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley*, 779 F.3d at 433-34 (internal marks and citations omitted).

9

*Video Exhibit*

Defendants' argument for qualified immunity relies on its description of the body camera video footage submitted with their Motion to Dismiss. *See* Doc. 6-1, at 18. The Court must therefore determine whether it may properly consider the body camera video footage submitted by Defendants with their Motion to Dismiss. Defendants contend it may. Plaintiff does not mention the video in opposition and does not respond to this argument.

As the Sixth Circuit recently explained, the Court "may only consider the video footage over the pleadings when 'the videos are clear and "blatantly contradict[ ]" or "utterly discredit[ ]" the plaintiff's version of events.'" *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1001 (6th Cir. 2024) (quoting *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (alterations in original) (further quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Brown v. Giles*, 95 F.4th 436, 440–41 (6th Cir. 2024); *Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023).

"This is because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." *Saalim*, 97 F.4th at 1001; *see also Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). "But when the video does not blatantly contradict or utterly discredit the complaint, [the Court may] not consider it on Rule 12 motion." *Id.* Instead, as when assessing any motion made under Rule 12, the Court must rely on the allegations in the pleadings alone. *Akima*, 85 F.4th at 422 ("[A]t the motion to dismiss stage we 'rely on the videos over the complaint' only 'to the degree the videos are clear and "blatantly contradict" or "utterly discredit" the plaintiff's version of events.'") (quoting *Bell*, 37 F.4th at 364); *see also Osberry v. Slusher*, 750 F. App'x 385, 390–91 (6th Cir. 2018) (declining to consider a video on a motion for judgment on the pleadings when the video did not "utterly discredit" the complaint's version of events).

10

Defendants rely on the video exhibits for the assertions that "Plaintiff was belligerent, argumentative, and hostile"; that "Plaintiff initiated a handshake, but did not let go, and grabbed Officer Rutledge's arm and pulled the Officer toward him"; that "Plaintiff repeatedly failed to comply with police directives, made statements confirming he was not going to comply, then abruptly stood and appeared to be trying to maneuver past the officers toward the potential domestic victim." (Doc. 6-1, at 17-20). Defendants also cite the video as evidence that Plaintiff "caused or attempted to cause physical harm [to] others, including by . . . engaging in a physical struggle[] and kicking and flailing his body", and that Plaintiff "engaged in conduct preventing officers from applying handcuffs to his right hand." *Id.* at 18-20. Defendants cite the body camera footage from Officers Rutledge and Dean for these assertions. *Id.* at 17-18.

The Court notes first that Defendants' description of the incident key to Plaintiff's excessive force claim (Plaintiff's arrest and the moments immediately before and immediately after) itself does not necessarily contradict Plaintiff's description of the incident. Plaintiff states he repeatedly attempted to stand and talk to his partner while Defendants attempted to prevent him from doing so. (Doc. 1, at ¶¶ 21-26). Defendants state Plaintiff "abruptly stood and . . . [tried] to maneuver past the officers" (Doc. 6-1, at 20). These are descriptions of the same event from two opposing points of view.

And upon review of the body camera footage itself, the footage does not "blatantly contradict or utterly discredit" the assertions in the Complaint. *Saalim*, 97 F.4th at 1001. Rutledge's body camera footage depicts Plaintiff repeatedly standing up and moving forward and Rutledge repeatedly telling Plaintiff to sit down and occasionally pushing Plaintiff to sit on the stairs. (Rutledge Video Footage, at 3:15-5:29). At 5:30 of the Rutledge footage, Rutledge holds Plaintiff's hands behind his back to arrest Plaintiff. The hands of several officers are visible

11

holding Plaintiff to the wall and holding his hands. *Id.* at 5:32. The officers appear to have difficulty getting the right handcuff onto Plaintiff's wrist. *Id.* at 5:47. Plaintiff appears to move his right hand. *Id.* at 5:48. The officers then appear to push Plaintiff facedown onto the stairs. *Id.* at 5:49-5:50. Plaintiff and officers begin to yell. *Id.* at 5:55. Officers hold Plaintiff's left arm twisted high up his back; Plaintiff's right elbow and upper arm are visible behind his back, but his right hand is not visible. *Id.* at 6:05. By 6:20, Plaintiff is fully handcuffed. As the officers pull Plaintiff off his stomach, a bloodstain is visible on the stairs. *Id.* at 6:30. Plaintiff's nose continues to visibly bleed onto the stairs. *Id.* at 6:45.

The footage from Dean's body camera does not provide a more definite view of events; he appears to have been standing directly next to Rutledge, and Plaintiff's action with his right hand – which Defendants describe in their motion as "engaging in a physical struggle" and "engag[ing] in conduct preventing officers from applying handcuffs to his right hand" (Doc. 1, at 18-20) – is still obscured. (Dean Video Footage, at 3:55-4:15).

The video footage additionally depicts – and Defendants include description of – unsympathetic behavior by Plaintiff. *See, e.g.*, Rutledge Video Footage at 8:04, Plaintiff shouting "Payday!". But the video footage's depiction of the events which actually underlie the excessive force claim is simply not clear enough to definitively state it "blatantly contradicts" Plaintiff's Complaint; in fact, one of the most clearly visible instances is that of a key part of the Complaint, that in which Plaintiff hits the stairs face-first hard enough to leave a bloodstain on the stairs.

Because the video footage does not utterly discredit Plaintiff's Complaint, and Plaintiff's allegations in the Complaint remain plausible, the Court finds it cannot consider the video

12

footage at the pleadings stage of this case.³ *Saalim*, 97 F.4th at 1001. And because Defendants' argument for qualified immunity rests almost entirely upon their description of the video footage, the Court declines to grant Defendants qualified immunity for Plaintiff's excessive force claim at this stage. *See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J.. concurring) (fact-intensive nature of qualified immunity analysis makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*") (emphasis in original).

Count Two

Finally, Defendants argue they are entitled to immunity from Count Two of the Complaint. (Doc. 6-1, at 24). Count Two asserts a state claim that the Officers acted recklessly and with conscious disregard of Plaintiff by "questioning and harassing [him] after resolution of the medical emergency, remaining on the premises without justification, and using unnecessary and excessive force while Plaintiff's hands were restrained behind his back." (Doc. 1, at 8).

Ohio statute grants political subdivision employees personal immunity from tort claims "caused by any act or omission in connection with a governmental or proprietary function" unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may

---

3. The Court additionally declines Defendants' invitation to convert their Motion to Dismiss to a motion for summary judgment at this early stage of the case.

sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Ohio Rev. Code § 2744.03(A)(6). The statute includes provision of police services and enforcement of law as governmental functions. Ohio Rev. Code § 2744.01(C)(2). It defines a "political subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Ohio Rev. Code § 2744.01(F).

Plaintiff argues exception (b) applies – that is, that Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner. (Doc. 9, at 12). When a defendant raises the defense of federal qualified immunity and Ohio state-law immunity for the same claim resting on the same issues, analysis of the state-law immunity defense is identical to the qualified immunity analysis. *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 602-03 (6th Cir. 2020). Because the Court declines to grant Defendants qualified immunity at this stage, it likewise declines to grant Defendants state-law immunity.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 6) be, and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein. The excessive force claim and state law claim against Defendants Dean, Rutledge, and McDermott may proceed at this stage.

   s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2024